***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rideout and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 *********** *Page 2 
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the N.C. Workers' Compensation Act.
2. On January 1, 2006, an employee-employer relationship existed between plaintiff and defendant-employer.
3. On January 1, 2006, Allied Claims Administration was the servicing agent of New Hanover Regional Medical Center's self-insured workers' compensation insurance.
4. New Hanover Regional Medical Center is a self insured hospital located in Wilmington, North Carolina.
5. Plaintiff is eligible for the maximum compensation rate for the years 2005 and 2006.
6. The parties stipulate to all medical records, reserving the right to depose the medical care providers and reserving the right to add to the medical records provided upon receipt of additional records.
7. Plaintiff was out of work on FMLA leave from February 15, 2006 through April 16, 2006.
8. When plaintiff's FMLA leave expired on April 16, 2006, plaintiff began receiving monthly long term disability benefits in the amount of $2,325.44.
9. The issues are before the Full Commission are whether plaintiff sustained an occupational disease as defined by N.C. Gen. Stat. § 97-52
to her bilateral hands/wrists due to repetitive use while in the course and scope of her employment on or about January 1, 2006, and *Page 3 
if so, whether she is entitled to any benefits; whether plaintiff is entitled to ongoing medical treatment for her alleged occupational disease; whether plaintiff is entitled to have medical bills paid for her alleged occupational disease; and whether defendants are entitled to a credit for any benefits or monies received by plaintiff while she was claiming workers' compensation benefits.
 ***********
Based upon all of the competent evidence adduced from the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 56 years old. Plaintiff has been employed as an EMS paramedic since 1994 at New Hanover Regional Medical Center in Wilmington, North Carolina.
2. As a paramedic, plaintiff's job duties varied, but included driving an ambulance, carrying approximately 125 to 145 pounds of equipment, and using a stretcher to transport equipment and patients. Plaintiff testified that when she was dispatched to a call which required a patient transport, she was required to depress a lever on a collapsible stretcher an average of four or five times per patient call.
3. In 2005, plaintiff responded to an average of 3.89 calls per 12 hour shift that required patient transports.
4. Plaintiff first sought medical treatment for bilateral hand numbness from her family physician, Dr. Neil Musselwhite, on December 12, 2005. She testified that this bilateral hand numbness had been bothering her for some time prior to this appointment. Dr. Musselwhite noted that plaintiff had a positive Phalen's test and ordered nerve conduction studies and an EMG. The EMG and nerve conduction testing were done on January 27, 2006, by *Page 4 
Dr. Patrick Boylan and revealed that plaintiff suffered from bilateral carpal tunnel syndrome. Dr. Musselwhite referred plaintiff to Dr. Dennis Nicks, a plastic surgeon who specializes in hand surgery, for further treatment.
5. On February 7, 2006, plaintiff began treating with Dr. Nicks. On February 15, 2006, Dr. Nicks performed right carpal tunnel release surgery. On April 26, 2006, Dr. Nicks performed left carpal tunnel release surgery.
6. On January 23, 2007, Dr. Nicks found that plaintiff had reached maximum medical improvement for her bilateral carpal tunnel syndrome and assigned medium duty work restrictions of frequent lifting or carrying of objects weighing up to 25 pounds, and occasional lifting 50 pounds maximum.
7. At his deposition, Dr. Nicks testified that it was "possible" that plaintiff's job as a paramedic placed her at an increased risk of developing bilateral carpal tunnel syndrome, but that he could not give an opinion that it was "probable." When presented by plaintiff's former counsel with an outline of plaintiff's job duties and asked if these facts enabled him to say to a reasonable degree of probability whether plaintiff's job duties as a paramedic caused or significantly contributed to her development of carpal tunnel syndrome, Dr. Nicks responded "I said no."
8. Dr. Musselwhite was asked at his deposition if he had an opinion as to whether plaintiff's job duties as an EMS caused her to develop bilateral carpal tunnel syndrome, and he indicated "I can't answer that." Dr.Musselwhite offered no opinion as to whether plaintiff's job duties placed her at an increased risk for the development of bilateral carpal tunnel syndrome.
9. No medical expert testified or provided an opinion that plaintiff's job duties caused or were a significant contributing factor in the development of her bilateral carpal tunnel *Page 5 
syndrome. Plaintiff also failed to establish by the greater weight of the competent medical evidence of record that plaintiff's job duties exposed her to a greater risk of developing carpal tunnel syndrome than members of the public not so employed.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In order to establish an occupational disease under N.C. Gen. Stat. § 97-53(13), a claimant must show: (1) the disease is characteristic of individuals engaged in the particular trade or occupation in which the plaintiff is engaged; (2) the disease is not an ordinary disease of life to which the public is equally exposed with those engaged in that particular trade or occupation; and (3) there is a causal relationship between the disease and the claimant's employment. Rutledge v. TutlexCorp., 308 N.C. 85, 301 S.E.2d 359 (1983).
2. In the present case, plaintiff failed to prove by the greater weight of the evidence that her employment caused or was a significant contributing factor in her development of carpal tunnel syndrome, that the carpal tunnel syndrome was characteristic of or peculiar to her employment, or that she was at an increased risk of developing this condition due to her work. Hansel v. Sherman Textiles, 304 N.C. 44,283 S.E.2d 101 (1981).
3. Therefore, plaintiff did not contract a compensable occupational disease within the meaning of the law. N.C. Gen. Stat. § 97-53(13).
 ***********
Based upon the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission makes the following: *Page 6 
 ORDER
1. Under the law, plaintiff's claim for workers' compensation benefits must be and is hereby DENIED.
2. Each side shall pay its own costs.
This the 22nd day of January 2008.
S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/______________________ BERNADINE BALLANCE COMMISSIONER
 S/______________________ BUCK LATTIMORE COMMISSIONER
 *Page 1